UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD J. LYMAN; WILLIAM F. WELD; and ROBERT D. CAPODILUPO, <br><br><br> Plaintiffs, <br><br><br> v. <br><br><br> CHARLES D. BAKER, in his official capacity as Governor of the Commonwealth of Massachusetts; and WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of the Commonwealth of Massachusetts, <br><br><br> Defendants. | Case No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**NATURE OF THE ACTION**

1.      The predominant method in America for counting votes in presidential elections violates the United States Constitution; it also distorts presidential campaigns, facilitates targeted outside interference in our elections, and ensures that a substantial number of citizen voters are disenfranchised when their votes are tallied in early November, only to be discarded when it really counts in mid-December.

2.      The Constitution assigns to presidential "Electors" the vote to choose the President and Vice President.  U.S. Const. art. II, § 1.  States determine how those Electors are

selected.  Massachusetts, like 47 other states and the District of Columbia, has decided to select Electors on a winner take-all ("WTA") basis, whereby the political party of the leading candidate among Massachusetts voters selects every Elector, with the vote of every other Massachusetts citizen rendered meaningless by receiving no Elector directly or through a political party.  In 2016, for example, Secretary Hillary Clinton received 60.0% of the votes in Massachusetts, yet she received every single electoral vote from Massachusetts.  Likewise, President Donald Trump received 32.8% of the votes in Massachusetts but received none of the electoral votes from Massachusetts.

3.     This magnification of certain votes and cancellation of all others is required by Massachusetts law.  Under Massachusetts' WTA method of selecting Electors, the party of the presidential candidate who wins more votes in the Commonwealth than any other candidate is awarded all of Massachusetts' eleven Electors.  *See* Mass. Gen. L. ch. 53, § 8 & ch. 54, §§ 43, 118, 148; *see also* National Archives and Records Administration, *Frequently Asked Questions*, https://www.archives.gov/federal-register/electoral-college/faq.html#wtapv (last visited Feb. 15, 2018) ("The District of Columbia and 48 states have a winner-takes-all rule for the Electoral College.  In these states, whichever candidate receives a majority of the popular vote, or a plurality of the popular vote (less than 50 percent but more than any other candidate), takes all of the state's Electoral votes.").

4.     The WTA method gives one candidate's party all of Massachusetts' Electors, regardless of whether the winning candidate has garnered only 42% of the popular vote and only 3,829 more votes than the next vote-getter in Massachusetts, as Ronald Reagan did in 1980, or as much as 76% of the vote in Massachusetts, as Lyndon Johnson did in 1964, or as many as 904,303 more votes than the next vote-getter in Massachusetts, as Hillary Clinton did in 2016.

Under any circumstance, the vote of each and every citizen voter is cancelled when the final direct election for President takes place unless it is cast for the winning candidate. This includes as many as 1,090,893 Massachusetts citizens who voted for Donald Trump in 2016, and may include an additional 138,018 who voted for Gary Johnson that year.

5.     In Massachusetts, it is Republican, Libertarian, and other non-Democratic voters who are effectively disenfranchised by the WTA system of selecting Electors. In each of the last eight presidential elections, the candidate who received the most popular votes in Massachusetts—and thereby received all of Massachusetts' Electors—has been a Democrat. In those eight presidential elections, 9,619,746 votes were cast for the Republican, Libertarian, and other non-Democratic candidates in Massachusetts, but all of the 95 Massachusetts Electors were awarded to the Democratic candidate.

6.     This problem is not unique to Republicans or Libertarians; it is also not unique to Massachusetts, as the same phenomenon occurs in reverse in heavily Republican states where votes for the Democratic, Libertarian, or other non-Republican candidate for President are systemically discarded before the final direct election for President.

7.     Thus, under the WTA system, millions of Massachusetts citizens have been and will continue to be denied their constitutional right to an equal vote in the presidential election.

8.     The WTA system also weakens the influence of Massachusetts citizens in presidential campaigns generally. In particular, WTA leads presidential campaigns to focus on "battleground" states that in 2016 together represented only 35% of eligible voters and did not include Massachusetts. George Pilsbury & Julian Johannesen, Nonprofit VOTE, *America Goes to the Polls 2016: A Report on Voter Turnout in the 2016 Election*, at 12 (Mar. 16, 2017), *available at* http://www.nonprofitvote.org/documents/2017/03/america-goes-to-the-polls-

2016.pdf/.  Accordingly, presidential campaigns largely do not focus on the citizens of

Massachusetts.  In fact, just four battleground states—Florida, North Carolina, Ohio and

Pennsylvania—saw 71% of campaign advertising spending and 57% of candidate appearances;

the top fourteen battleground states[1] saw 99% of advertising spending and 95% of candidate

appearances.  *Id.*  at 7, 12.  WTA therefore causes candidates for President and Vice President to

give disproportionate attention to an unrepresentative subset of the country, ultimately giving

that unrepresentative subset outsized political influence.  Under such circumstances, the

presidential election does not reflect or include the voices of the entire nation, including

individuals in Massachusetts.

9.      Finally, the WTA system distorts presidential campaigns and facilitates outside

interference in our elections.  In close elections, WTA makes it much easier and much more

likely for a very small number of voters in a few predictable battleground states to determine the

final electoral result than would be the case with a system of proportional selection of Electors.

This increased vulnerability gives the Court added reason to ensure that the current system

satisfies the requirements of the Constitution.

10.     This lawsuit is a challenge to the WTA method selected by Massachusetts.  As

established by longstanding Supreme Court precedent, that exercise of state discretion remains

subject to Constitutional norms, including the First and Fourteenth Amendments.

11.     To be clear, this lawsuit is not a challenge to the Electoral College, which is

mandated by the Constitution.  Instead, it is a challenge to the decision of Massachusetts to

award and select Electors on a WTA basis.  The Constitution does not address how states should

select Electors, and it certainly does not require WTA.  To the contrary, as shown below, WTA

---

[1]  The fourteen battleground states in the 2016 presidential election were assumed to be Arizona, Colorado, Florida,
Georgia, Iowa, Maine, Michigan, Nevada, New Hampshire, North Carolina, Ohio, Pennsylvania, Virginia, and
Wisconsin.

is inimical to the long-established principle of "one person, one vote," and thereby violates the fundamental constitutional right to vote, as well as other constitutional rights.

12.     Plaintiffs seek (1) a declaratory judgment that the WTA provisions of Massachusetts' code (*see* Mass. Gen. L. ch. 53, § 8 & ch. 54, §§ 43, 118, 148) violate the First and Fourteenth Amendments to the United States Constitution; and (2) an order permanently enjoining the use of the WTA method (or other non-representational methods, such as selection by Congressional District vote) of selecting Electors in presidential elections.

13.     WTA violates the Fourteenth Amendment because it counts votes for a losing presidential candidate in Massachusetts only to discard them in determining Electors who cast votes directly for the presidency.  Put differently, the WTA system unconstitutionally magnifies the votes of a bare plurality of voters by translating those votes into an entire slate of presidential Electors, all of whom support the nominee of a single political party—while, at the same time, the votes cast for all other candidates are given no effect.  Accordingly, in the last eight presidential elections, not less than 38.1% and as much as 52.46% of Massachusetts voters cast a vote for one of the candidates who did not win the popular vote in Massachusetts, and those voters thereby effectively had their votes cancelled.  Their votes were completely irrelevant to how the Electors representing Massachusetts voted in the Electoral College.  WTA thus treats Massachusetts citizens who vote for a losing candidate in an arbitrary and disparate manner in clear violation of the principle of "one person, one vote."

14.     In addition, WTA violates the First Amendment because of the burdens that it places on the right of association and on the right to have a voice in presidential elections through casting a vote.  There is no state interest that remotely outweighs these burdens.  Again, not less than 32.50% and as much as 52.46% of voters in the last eight presidential elections—in

Massachusetts, and similarly across the nation—have voted for a losing candidate, and none of their votes have counted in the final direct election.  This trend will likely continue.

## JURISDICTION AND VENUE

15.     Subject matter jurisdiction for Plaintiffs' claims under the First and Fourteenth Amendments to the United States Constitution exists under 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

16.     Venue is proper in this Court under 28 U.S.C. § 1391(b).

## PARTIES

17.     Because of Massachusetts' WTA method of selecting Electors, each of the individual Plaintiffs listed below ("Individual Plaintiffs") has suffered, and will again suffer, an injury that comes from lacking any meaningful representation in the final vote count for the President (and Vice President) of the United States.  In particular, because the Plaintiffs have voted for, and will vote for, the Republican, Libertarian, or other non-Democratic candidate for President in Massachusetts, they have been, and will be again, deprived of the right to have their votes counted equally and meaningfully toward the election of the President.

18.     Plaintiff William F. ("Bill') Weld is a former Republican Governor of the Commonwealth of Massachusetts.  Governor Weld is currently a resident of, and registered as a Libertarian in, Massachusetts.  He has never been a registered Democrat, and he has consistently voted for the Republican, Libertarian or other non-Democratic candidate for President.  Governor Weld plans to remain a permanent resident of Massachusetts, where he plans to continue to vote in future presidential elections for the Libertarian candidate.

19.     Plaintiff Richard J. ("R.J.") Lyman is a former appointed senior official under two Republican Governors of the Commonwealth of Massachusetts.  Mr. Lyman is currently a

resident of, and registered as a Republican in, Massachusetts.  Mr. Lyman has never been a

registered Democrat, and he has repeatedly voted for the Republican, Libertarian, or other non-

Democratic candidate for President. Mr. Lyman plans to remain a permanent resident of

Massachusetts, where he plans to continue to vote in future presidential elections for

the Republican, Libertarian, or other non-Democratic candidate.

20.     Plaintiff Robert D. Capodilupo is currently a resident of, and registered as a

Republican in, Massachusetts.  Mr. Capodilupo has never been a registered Democrat, and he

voted in the Republican primary and for the Republican candidate in the 2016 general election,

the first in which he was eligible to vote.  Mr. Capodilupo plans to remain a permanent resident

of Massachusetts, where he plans to continue to vote in future presidential elections for

the Republican candidate.

21.     Defendant Charles D. Baker is the Governor of Massachusetts and is sued in his

official capacity for declaratory and prospective injunctive relief to prevent a violation of federal

constitutional and statutory rights.  Governor Baker is the chief executive officer of the

Commonwealth of Massachusetts and has the duty to communicate to the "Archivist of the

United States a certificate of such ascertainment of the electors appointed, setting forth the

names of such electors and the canvass or other ascertainment under the laws of such State of the

number of votes given or cast for each person for whose appointment any and all votes have

been given or cast".  3 U.S.C. § 6.  In these circumstances, Governor Baker has no immunity

from suit.

22.     Defendant William Francis Galvin is the Secretary of the Commonwealth of

Massachusetts and is sued in his official capacity for declaratory and prospective injunctive relief

to prevent a violation of federal constitutional and statutory rights.  Mr. Galvin supervises and

controls the department of the state secretary, which administers state and federal elections in the Commonwealth.  In these circumstances, Mr. Galvin has no immunity from suit.

## WTA IS NOT MANDATED BY THE CONSTITUTION

23.     Under Article II, Section 1 of the U.S. Constitution, states are given authority to determine the manner of selecting Electors.  That provision of the Constitution states: "Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors" to choose a President and Vice President.

24.     "When the state legislature vests the right to vote for President in its people, the right to vote as the legislature has prescribed is fundamental; and one source of its fundamental nature lies in the equal weight accorded to each vote and the equal dignity owed to each voter." *Bush v. Gore*, 531 U.S. 98, 104 (2000).

25.     The Constitution grants "extensive power to the States to pass laws regulating the selection of electors.  But the Constitution is filled with provisions that grant Congress or the States specific power to legislate in certain areas; these granted powers are always subject to the limitation that they may not be exercised in a way that violates other specific provisions of the Constitution."  *Williams v. Rhodes*, 393 U.S. 23, 29 (1968).

26.     Massachusetts has chosen the WTA system of selecting Electors for presidential races.  Neither Article II, Section 1 of the U.S. Constitution, nor any other constitutional provision, compels Massachusetts to make that choice.

## MASSACHUSETTS' METHOD OF SELECTING ELECTORS IS UNCONSTITUTIONAL

27.     Massachusetts' WTA method of selecting Electors violates the Fourteenth Amendment's command that no State may "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  It also violates the First Amendment by

8

unduly burdening the rights of the citizens of Massachusetts to associate and to effectively express their political preferences through voting.  *See* U.S. Const. amend. I, § 1.

28.     Under Article II, Section 1 of the United States Constitution, each state is required to appoint the same number of Electors as it has Senators and Representatives.  U.S. Const. art. II, § 1.  These Electors are tasked with electing the President and Vice President of the United States.  *Id.*

29.     While Article II, Section 1 grants the states "extensive power" to "pass laws regulating the selection of electors," it cannot be "thought that the power to select electors could be exercised in such a way as to violate express constitutional commands that specifically bar States from passing certain kinds of laws."  *Rhodes*, 393 U.S. at 29.  The Supreme Court has made clear "that no State can pass a law regulating elections that violates the Fourteenth Amendment's command that No State shall deny to any person the equal protection of the laws."  *Id.* (internal quotation marks and ellipses omitted).  "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.  Other rights, even the most basic, are illusory if the right to vote is undermined.  Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right."  *Wesberry v. Sanders*, 376 U.S. 1, 17–18 (1964).

30.     In Massachusetts, as in the rest of the country, citizens do not vote directly for President.  Instead, they vote for Electors, who then cast their votes in a direct election for President.  Massachusetts has chosen to adopt a WTA system for determining Electors.  Under this system, all of Massachusetts' eleven Electors are members of the political party that nominated the candidate that wins the popular vote in the state.  The consequence of this system is to give no effect to the votes of citizens who voted for a losing candidate in Massachusetts in

the tabulation of the final vote for President.  Massachusetts' WTA system violates the "one person, one vote" principle, long enshrined in Supreme Court's Fourteenth Amendment jurisprudence, because votes for a losing presidential candidate are counted in Massachusetts only to be discarded when another candidate wins more votes in Massachusetts.  In other words, if an individual does not vote for the winning candidate in Massachusetts, that person's vote translates into no representation in the state's multi-member Electoral College delegation.

> **A.**      **The WTA Method of Determining Electors Violates the "One Person, One Vote" Principle and the Fourteenth Amendment.**

31.      In 2016, 40.0% of voters in Massachusetts voted for the Republican, Libertarian, or other non-Democratic candidate for President.  Despite this significant bloc of support, every single Republican, Libertarian, or other non-Democratic vote was systemically discarded under the WTA method of selecting Electors.

32.      Such systemic discarding of votes occurs in election after election in Massachusetts.  In the last eight presidential elections, for example, the non-Democratic candidates for President received in Massachusetts at least 38% of the vote—40% in 2016 (1,329,850 votes), 39.3% in 2012 (1,246,477 votes), 38.2% in 2008 (1,176,888 votes), 38.1% in 2004 (1,108,588 votes), 40.2% in 2000 (1,086,497 votes), 38.5% in 1996 (985,022 votes), 52.4% in 1992 (1,455,038 votes), and 46.8% in 1988 (1,231,386 votes).  In each of these elections, the entirety of Massachusetts' Electors went to Democratic candidates, cancelling the votes of Republican and other non-Democratic voters.  Combined, Massachusetts has discarded over nine and a half million presidential votes over the last eight elections.  During the same period, Democratic candidates received over 13.5 million popular votes, but those votes were unduly magnified in each election and translated into the election of 95 total Electors, and 95 total electoral votes cast for Democratic presidential nominees.  During the same period,

Massachusetts selected zero Republican or other non-Democratic Electors instead of the 36 or more to which they are equitably and constitutionally entitled.

33.     The inequitable nature of the current system of determining Electors has been recognized by both major parties.  As Saul Anuzis, the former Chairman of the Michigan Republican Party, stated, "This is, to me, a nonpartisan issue.  It's a question of what is the right way to elect a president.  In every other office in the land, we elect the person who gets the most votes, from dog catcher to governor."  Eliza Newlin Carney, *GOP Nonprofit Backs Electoral College*, Roll Call (Dec. 7, 2011, 12:57 PM), http://www.rollcall.com/news/GOP-Nonprofit-Backs-Electoral-College-210872-1.html.

34.     Democrats also share this view.  For example, Representative James Clyburn, when writing on the WTA system of selecting Electors, stated, "My position has always been that winner-take-all elections trample on the variety of voices in our diverse country. Winner-take-all elections by their very nature mean that the highest vote getter wins, even if the margin of victory is only one vote."  James Clyburn, *Representative James Clyburn: Mend It*, The American Prospect (Dec. 19, 2001), http://prospect.org/article/flunking-electoral-college. Similarly, retired Senate Minority Leader Harry Reid called the Electoral College "very undemocratic."  Chris Sanchez, *'UNDEMOCRATIC': Harry Reid goes in on the Electoral College*, Business Insider (Dec. 13, 2016, 10:54 PM), http://www.businessinsider.com/electoral-college-undemocratic-harry-reid-trump-hillary-clinton-2016-12.

35.     The "one person, one vote" principle means that Massachusetts may not "value one person's vote over that of another."  *Bush*, 531 U.S. at 104–05.  The Supreme Court laid the groundwork for the "one person, one vote" principle over fifty years ago in *Baker v. Carr*, 369 U.S. 186 (1962), in which it recognized a right to vote "free of arbitrary impairment by state

action" whether "such impairment resulted from dilution by a false tally, or by a refusal to count votes from arbitrarily selected precincts, or by a stuffing of the ballot box." *Id.* at 208 (internal citations omitted).

36.     "One person, one vote" was first articulated the following year in *Gray v. Sanders*, 372 U.S. 368 (1963), which involved a challenge to Georgia's system for allocating votes in the primary for statewide office.  The Court invalidated Georgia's system because the candidate winning the popular vote in the county under that system would receive "the entire unit vote of that county," with "other votes for a different candidate being worth nothing and *being counted only for the purpose of being discarded*."  *Gray*, 372 U.S. at 381 n.12 (emphasis added).  In so holding, the Court stressed: "The conception of political equality from the Declaration of Independence, to Lincoln's Gettysburg Address, to the Fifteenth, Seventeenth, and Nineteenth Amendments can mean only one thing—one person, one vote." *Id.* at 381.

37.     "Over the ensuing decades, the Court has several times elaborated on the scope of the one-person, one-vote rule." *Evenwel v. Abbott*, 136 S. Ct. 1120, 1124 (2016).  The Supreme Court applied "one person, one vote" to invalidate a scheme for the apportionment of seats in the Alabama legislature, *see Reynolds v. Sims*, 377 U.S. 533, 563 (1964) (applying "one person, one vote" to strike down method for counting votes and highlighting that weighting "the votes of citizens differently, by any method or means, merely because of where they happen to reside, hardly seems justifiable"), and to a system placing Electors for a new party on the ballot, *see Moore v. Ogilvie*, 394 U.S. 814, 819 (1969) (concluding "The idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government").

38.     Only one case involving the constitutionality of a WTA system in the context of presidential elections has reached the Supreme Court and, in that case, the Court summarily affirmed the lower court's decision without an opinion.  *Williams v. Va. State Bd. of Elections*, 288 F. Supp. 622 (E.D. Va. 1968), *summarily aff'd without opinion,* 393 U.S. 320 (1969).  In *Williams*, the plaintiffs brought an Equal Protection Clause challenge to Virginia's WTA system for selecting Electors before a three-judge panel.  The panel acknowledged "discrimination against the minority voters" because "once the electoral slate is chosen, it speaks only for the element with the largest number of votes."  *Id.* at 627.  It nonetheless dismissed the complaint, ruling that "in a democratic society the majority must rule, unless the discrimination is *invidious.*"  *Id.* (emphasis added).  The panel found that "No such evil has been made manifest" and dismissed the complaint.  *Id.*

39.     To the extent that there was once an invidiousness requirement to a Fourteenth Amendment claim involving violation of the "one person, one vote" principle, the Court's decision in *Bush v. Gore*, 531 U.S. 98 (2000) removed it.  There, the Supreme Court invalidated Florida's process for recounting votes in the 2000 presidential election for violating the "one person, one vote" principle.  Notably, there was no suggestion that any unequal treatment of votes under Florida's process was invidious.  *See Bush*, 531 U.S. at 105; *see also id.* at 104 ("When the state legislature vests the right to vote for President in its people, the right to vote as the legislature has prescribed is fundamental; and one source of its fundamental nature lies in the equal weight accorded to each vote and the equal dignity owed to each voter."); *id.* at 107 (holding that "'the idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government'") (quoting *Moore*, 394 U.S. at 819 (alteration omitted)).

13

**B.     The WTA Method of Determining Electors Violates the Right to Associate Protected by the First and Fourteenth Amendments to the United States Constitution.**

40.     The right to associate is protected under the First and Fourteenth Amendments. "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958).

41.     The Supreme Court has long held that "political belief and association constitute the core of those activities protected by the First Amendment." *Elrod v. Burns*, 427 U.S. 347, 356 (1976).  The "right of individuals to associate for the advancement of political beliefs" and "the right of qualified voters, regardless of their political persuasion, to cast their votes effectively" are "overlapping" rights that "rank among our most precious freedoms." *Rhodes*, 393 U.S. at 30.

42.     Massachusetts' WTA selection of Electors deprives Plaintiffs of their First and Fourteenth Amendment associational rights based solely on Plaintiffs' political association and expression of political views at the ballot box.

43.     Massachusetts' WTA selection of Electors discards Plaintiffs' votes for President, limiting Plaintiffs' ability to express their political preference.  When Massachusetts citizens express their political preference through a vote for the Republican, Libertarian, or other non-Democratic candidate, Massachusetts' WTA selection of Electors ensures that Plaintiffs' voices are not heard and Plaintiffs' votes do not count toward the selection of Electors.  Plaintiffs each become an "unequal participant in the decisions of the body politic." *Whitford v. Gill*, 218 F. Supp. 3d 837, 883 (W.D. Wis. 2016).

14

44.     In 1986, the Supreme Court held that a state law restricting access to primary voting to those who were registered members of the party was unconstitutional because it limited "the Party's associational opportunities at the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community." *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 216 (1986).  The associational rights of Plaintiffs and other Republicans, Libertarians, and other non-Democrats in Massachusetts are similarly restricted due to Massachusetts' WTA selection of Electors. Plaintiffs' votes are discarded "at the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community." *Id.*

45.     The WTA system also limits Plaintiffs' associational rights because it dilutes the power of the Republican, Libertarian, and other non-Democratic voters in Massachusetts.  As a result, candidates from major political parties rarely hold campaign events in Massachusetts once they are selected by their parties in the primary.  This results in a reduced opportunity for all Massachusetts voters to interface with and petition the candidates for major political parties in person, and "to express their ideas, hopes, and concerns to their government and their elected representatives" as is also protected by the Petition Clause of the First Amendment.  *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011).

46.     The impact of Massachusetts' WTA system is felt nationally as well as locally. Indeed, "in the context of a Presidential election, state-imposed restrictions implicate a uniquely important national interest." *Anderson v. Celebrezze*, 460 U.S. 780, 794–95 (1983) (footnote call omitted).  "Moreover, the impact of the votes cast in each State is affected by the votes cast for the various candidates in other States*"* and burdens on associational rights may place "a significant state-imposed restriction on a nationwide electoral process." *Id.* at 795.

47.     Massachusetts has "a less important interest in regulating Presidential elections than statewide or local elections, because the outcome of the former will be largely determined by voters beyond the State's boundaries." *Id.* And any regulation of such elections may not contravene constitutional rights. *See id.* at 788 (citing *Storer v. Brown*, 415 U.S. 724, 730 (1974)).

48.     "When deciding whether a state election law violates First and Fourteenth Amendment associational rights," courts must "weigh the 'character and magnitude' of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)).

49.     Massachusetts' WTA selection of Electors poses a severe burden on Plaintiffs' associational rights that is not outweighed by any legitimate state interest.

## C.     The WTA System Makes United States Elections More Vulnerable to Outside Influences.

50.     As government reports have concluded, "Russian intelligence accessed elements of multiple state or local electoral boards.  Since early 2014, Russian intelligence has researched US electoral processes and related technology and equipment."  U.S. Office of the Dir. of Nat'l Intelligence, Background to "Assessing Russian Activities and Intentions in Recent US Elections": The Analytic Process and Cyber Incident Attribution, at 3 (2017), https://www.dni.gov/files/documents/ICA_2017_01.pdf.  "Russia's effort to influence the 2016 US presidential election represented a significant escalation in directness, level of activity, and scope of effort compared to previous operations aimed at US elections."  *Id.* at 5.  Efforts from

the outside to influence the outcome of United States elections strike at the core of our democracy.

51.     The current WTA system makes our election system more vulnerable to outside attacks, as prevailing under that system usually depends on gaining a majority in a handful of battleground states.  As one commentator explained: "It is true that our decentralized, precinct-by-precinct system would make a coordinated national vote hack a massive undertaking.  But given that our elections usually come down to a few predictable states, swaying even a national election is not as hard a task as it once seemed.  Sowing chaos at the district or precinct level appears to be within hackers' current capabilities."  Suzanne Mello-Stark, *It's now clear US voting is hackable.  Here are 6 things we must do to prevent chaos*, Vox (June 16, 2017, 10:50 AM), https://www.vox.com/the-big-idea/2017/6/16/15816510/voting-security-hacks-russia-georgia-election.

52.     Under a more equitable and constitutional method of selecting Electors, the risk of an outside influence changing the outcome of a presidential election is greatly reduced.  The votes of citizens in each state become meaningful and the outcomes of elections do not boil down to the winner of a few easily predictable states.

## CAUSES OF ACTION

### Count I – Fourteenth Amendment to the United States Constitution

53.     Plaintiffs reallege and incorporate all prior paragraphs of this Complaint.

54.     Massachusetts' WTA system of selecting Electors results in the votes of citizens who voted for a losing candidate in the state not being counted in the final direct election for President.  Accordingly, Massachusetts' WTA method of determining Electors violates the "one person, one vote" principle and the Fourteenth Amendment to the United States Constitution.

55.     Unless enjoined by order of this Court, Defendants will continue to violate the Fourteenth Amendment to the United States Constitution by implementing the WTA method of selecting Electors.

**Count II – First and Fourteenth Amendments to the United States Constitution**

56.     Plaintiffs reallege and incorporate all prior paragraphs of this Complaint.

57.     Massachusetts' WTA system poses a severe burden on Plaintiffs' rights to associate and to effectively express their political preference through voting that is not outweighed by any legitimate state interest.  Accordingly, Massachusetts' WTA method of determining Electors violates the First and Fourteenth Amendments to the United States Constitution.

58.     Unless enjoined by order of this Court, Defendants will continue to violate the First and Fourteenth Amendments to the United States Constitution by implementing the WTA method of selecting Electors.

**ATTORNEYS' FEES**

59.     In accordance with 52 U.S.C. § 20510 and 42 U.S.C. § 1988, Plaintiffs are entitled to recover reasonable attorney's fees, expenses, and costs.

**PRAYER FOR RELIEF**

60.     WHEREFORE, Plaintiffs respectfully request that this Court:

a.  declare that Massachusetts' current method of selecting Electors under Massachusetts General Laws chapter 53, section 8, and chapter 54, sections 43, 118, and 148, and any other related section, is unlawful because it (1) treats Massachusetts citizens who vote for a losing candidate in an arbitrary and disparate manner in violation of the Fourteenth Amendment of the United States Constitution; and (2) burdens these

citizens' rights to associate and to express their political preference effectively through voting in violation of the First and Fourteenth Amendments to the United States Constitution;

b.  declare that Plaintiffs' rights will be irreparably harmed without injunctive or declaratory relief from this Court;

c.  enjoin Defendants from selecting Electors under the challenged WTA system, or any other system that fails to treat each Massachusetts citizen's vote for the President in an equal manner, including selection by Congressional District vote;

d.  set reasonable deadlines for state authorities to propose and then implement a method of selecting Electors that treats each Massachusetts citizen's vote for the President in an equal manner, making clear that such a system *cannot* include selections by Congressional District vote;

e.  if state authorities fail to propose or implement a valid method of selecting Electors by the Court's deadlines, order a proportional method of distributing Electors, selecting a proportional number of Electors to each party, based on the number of votes each party's candidate receives statewide;

f.  adjudge all costs against Defendants, including reasonable attorneys' fees and costs;

g.  retain jurisdiction to render any and all further orders that this Court may deem necessary in order to ensure compliance; and

h.  grant any and all further relief to which Plaintiffs may show themselves to be entitled.

DATED: February 21, 2018                    Respectfully submitted,


/s/ James D. Gotz
James D. Gotz, Esq. BBO #567157          David Boies (*Pro Hac Vice* Pending)
HAUSFELD LLP                             BOIES SCHILLER FLEXNER LLP
One Marina Park Drive                    333 Main Street
Suite 1410                               Armonk, NY 10504
Boston, MA 02110                         Telephone:  (914) 749-8200
Telephone: (617) 207-0600                Facsimile:  (213) 629-9022
Facsimile: 617-830-8312                  DBoies@bsfllp.com
jgotz@hausfeld.com

                                         James P. Denvir, III (*Pro Hac Vice* Pending)
Scott A. Martin (*Pro Hac Vice* Pending) Amy J. Mauser (*Pro Hac Vice* Pending)
Irving Scher (*Pro Hac Vice* Pending)    Karen L. Dunn (*Pro Hac Vice* Pending)
Jeanette Bayoumi (*Pro Hac Vice* Pending) Lisa Barclay (*Pro Hac Vice* Pending)
HAUSFELD LLP                             Amy L. Neuhardt (*Pro Hac Vice* Pending)
33 Whitehall Street, 14th Floor          Hamish P.M. Hume (*Pro Hac Vice* Pending)
New York, NY 10004                       BOIES SCHILLER FLEXNER LLP
Telephone: (646)357-1100                 1401 New York Avenue, N.W.
Facsimile: (212)202-4322                 Washington, D.C.  20005
smartin@hausfeld.com                     Telephone: (202) 237-2727
ischer@hausfeld.com                      Facsimile: (202) 237-6131
jbayoumi@hausfeld.com                    JDenvir@BSFLLP.com
                                         AMauser@BSFLLP.com
                                         KDunn@BSFLLP.com
Michael D. Hausfeld (*Pro Hac Vice* Pending) LBarclay@BSFLLP.com
Swathi Bojedla  (*Pro Hac Vice* Pending) ANeuhardt@BSFLLP.com
HAUSFELD LLP                             HHume@BSFLLP.com
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200                 Randall L. Allen (*Pro Hac Vice* Pending)
Facsimile: (202) 540-7201                ALSTON & BIRD LLP
mhausfeld@hausfeld.com                   1201 West Peachtree Street
sbojedla@hausfeld.com                    Atlanta, GA  30309-3424
                                         Telephone:  (404) 881-7196
                                         Facsimile:  (404) 253-8473
                                         Randall.Allen@alston.com
Jennifer D. Hackett (*Pro Hac Vice* Pending)
James R. Martin (*Pro Hac Vice* Pending)
Allison M. Vissichelli (*Pro Hac Vice* Pending)
ZELLE LLP                                Matt Herrington (*Pro Hac Vice* Pending)
1775 Pennsylvania Avenue, N.W., Suite 375 Roger E. Warin (*Pro Hac Vice* Pending)
Washington, D.C.  20009                  Joe R. Caldwell, Jr. (*Pro Hac Vice* Pending)
Telephone:  (202) 899-4100               STEPTOE & JOHNSON LLP
Facsimile:  (202) 899-4102               1330 Connecticut Avenue, N.W.

jhackett@zelle.com
jmartin@zelle.com
avissichelli@zelle.com


Seth V. Jackson, Esq., BBO # 658669
ZELLE LLP
161 Worcester Road, Suite 502
Framingham, MA  01701
Telephone:  (781) 466-0700
Facsimile:  (781) 466-0701
sjackson@zelle.com


Mark Guerrero (*Pro Hac Vice* Pending)
Mary Whittle (*Pro Hac Vice* Pending)
GUERRERO & WHITTLE PLLC
114 West 7th Street, Suite 1100
Austin, TX 78701
Telephone: (512) 605-2300
Facsimile:  (512) 222-5280
mark@gwjustice.com
mary@gwjustice.com


Samuel Issacharoff (*Pro Hac Vice* Pending)
40 Washington Square South
New York, NY 10012
Telephone: (212) 998-6580
si13@nyu.edu

Washington, D.C.  20036
Telephone:  (202) 429-3000
Facsimile:  (202) 429-3902
mherrington@steptoe.com
rwarin@steptoe.com
jcaldwell@steptoe.com


María Amelia Calaf (*Pro Hac Vice* Pending)
Jack A. Simms, Jr. (*Pro Hac Vice* Pending)
Ryan A. Botkin (*Pro Hac Vice* Pending)
Katherine P. Chiarello (*Pro Hac Vice* Pending)
Karen S. Vladeck (*Pro Hac Vice* Pending)
WITTLIFF | CUTTER | AUSTIN, PLLC
1803 West Ave.
Austin, Texas  78701
Telephone:  (512) 960-4730
Facsimile:  (512) 960-4869
mac@wittliffcutter.com
jack@wittliffcutter.com
ryan@wittliffcutter.com
katherine@wittliffcutter.com
karen@wittliffcutter.com


Attorneys for Plaintiffs