UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

RICHARD J. LYMAN, WILLIAM F. WELD, and
ROBERT D. CAPODILUPO,

Plaintiffs,

v.

CHARLES D. BAKER, in his official capacity as
Governor of the Commonwealth of Massachusetts;
and WILLIAM FRANCIS GALVIN, in his official
capacity as Secretary of the Commonwealth of
Massachusetts,

Defendants.

CIVIL ACTION
NO. 18-10327-PBS

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS COMPLAINT

MAURA HEALEY
ATTORNEY GENERAL

Robert E. Toone, BBO #663249
Juliana deHaan Rice, BBO #564918
Amy Spector, BBO #557611
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, Massachusetts  02108
617-963-2178
Robert.Toone@state.ma.us

Dated:  May 21, 2018

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .............................................................................................................1

BACKGROUND ..............................................................................................................2

ARGUMENT ..................................................................................................................4

I.    THIS COURT LACKS JURISDICTION. ..................................................................4

      A.    Plaintiffs Do Not Allege a Concrete and Particularized Injury. ................................. 4

      B.    Plaintiffs' Alleged Injury Will Not Be Redressed by a Favorable
            Decision. ........................................................................................................ 7

II.   SEEKING TO OVERTURN A PRACTICE USED SINCE THE
      ELECTION OF GEORGE WASHINGTON, PLAINTIFFS BRING
      CLAIMS THAT ARE FORECLOSED BY BINDING SUPREME COURT
      PRECEDENT. .....................................................................................................9

      A.    The Winner-Take-All System in Massachusetts Is Consistent with the
            Constitutional Design and Reflects a Policy Choice That States Have
            Made Since the First Presidential Election. ................................................ 9

      B.    Settled Supreme Court Precedent Requires Dismissal of Plaintiffs'
            Claims. ......................................................................................................... 11

      C.    *Bush v. Gore* Did Not Alter the Legal Landscape. ................................... 13

III.  USE OF THE WINNER-TAKE-ALL METHOD TO ALLOCATE
      PRESIDENTIAL ELECTORS DOES NOT VIOLATE THE "ONE
      PERSON, ONE VOTE" PRINCIPLE. ...............................................................15

IV.   USE OF THE WINNER-TAKE-ALL METHOD TO ALLOCATE
      PRESIDENTIAL ELECTORS DOES NOT VIOLATE PLAINTIFFS'
      RIGHT TO FREEDOM OF ASSOCIATION. ....................................................19

CONCLUSION ...............................................................................................................21

**TABLE OF AUTHORITIES**

**<u>Cases</u>**

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ...............................................................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................9

*Becker v. FEC*, 230 F.3d 381 (1st Cir. 2000) .............................................................5, 6

*Berg v. Obama*, 586 F.3d 234 (3d Cir. 2009) ................................................................6

*Blum v. Holder*, 744 F.3d 790 (1st Cir. 2014) ..............................................................4

*Bostic v. Schaefer*, 760 F.3d 353 (4th Cir. 2014)........................................................13

*Bush v. Gore*, 531 U.S. 98 (2000) (*per curiam*) ...............................................5, 13-15

*City of Mobile v. Bolden*, 446 U.S. 55 (1980)..........................................................2, 18

*Collins v. Merrill*, No. 16-cv-9375 (RJS),
    2016 WL 7176651 (S.D.N.Y. Dec. 7, 2016) ......................................................6, 7

*Conant v. Brown*, 248 F. Supp.3d 1014 (D. Or. 2017),
    *appeal pending*, No. 17-35349 (9th Cir.) .....................................................13, 15

*Crist v. Comm'n on Presidential Debates*,
    262 F.3d 193 (2d Cir. 2001)....................................................................................6

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)...........................................................................................4, 6

*Delaware v. New York*, 385 U.S. 895 (1966)..............................................................4n

*Fischer v. Cruz*, No. 16-cv-1224 (JS) (ARL),
    2016 WL 1383493 (E.D.N.Y. Apr. 7, 2016) ...................................................... 6-7

*Fla. Audubon Soc. V. Bentsen*,
    94 F.3d 658 (D.C. Cir. 1996) .................................................................................7

*Froelich v. FEC*, 855 F. Supp. 868 (E.D. Va. 1994) ...................................................7

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990)...................................................4

*Gonzales v. Gorsuch*, 688 F.2d 1263 (9th Cir. 1982) ..................................................8

ii

*Gordon v. Lance*, 403 U.S. 1 (1971) ..........................................................................17

*Graham v. Fong Eu*, 403 F. Supp. 37 (N.D. Cal. 1975),
    *aff'd*, 423 U.S. 1067 (1976) (*per curiam*) .......................................... 16-17, 19n

*Gray v. Sanders*, 372 U.S. 368 (1963) ............................................................. 12, 15-17

*Harris v. Arizona Indep. Redistricting Comm'n*,
    136 S. Ct. 1301 (2016) ...............................................................................14

*Hitson v. Baggett*, 446 F. Supp. 674 (M.D. Ala.),
    *aff'd without opinion*, 580 F.2d 1051 (5th Cir. 1978) .......................................13

*Illinois State Bd. of Elections v. Socialist Workers Party*,
    440 U.S. 173 (1979) ...................................................................................20

*Jones v. Bush*, 122 F. Supp.2d 713 (N.D. Tex.)*, aff'd*,
    244 F.3d 134 (5th Cir. 2000) .......................................................................7

*Lance v. Coffman*, 549 U.S. 437 (2007) .......................................................................5

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .........................................................4, 6

*Mandel v. Bradley*, 432 U.S. 173 (1977) ................................................................1, 13

*McNutt v. General Motors Acceptance Corp.*,
    298 U.S. 178 (1936) ....................................................................................4

*McPherson v. Blacker*, 146 U.S. 28 (1892) ........................................ 2, 5, 9, 11, 14-15

*NLRB v. Noel Canning*, 134 S. Ct. 2550 (2014) ...........................................................9

*Penton v. Humphrey*, 264 F. Supp. 250 (S.D. Miss. 1967) ........................................11n

*Repub. Party of N.C. v. Martin*, 980 F.2d 943 (4th Cir. 1993) ....................................20

*Reynolds v. Sims*, 377 U.S. 533 (1964) ........................................................... 12, 15-18

*Schweikert v. Herring*, No. 3:16-CV-00072,
    2016 WL 7046845 (W.D. Va. Dec. 2, 2016) ................................. 10, 13, 14-15

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) ..............................................7

*Smith v. Ark. State Highway Employees*, 441 U.S. 463 (1979) ....................................20

*Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540 (2016) ............................................................4

*Tashijian v. Repub. Party of Conn.*, 479 U.S. 208 (1986) ............................................20

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997)................................................................................................ 19-20

*Town of Greece v. Galloway*, 134 S. Ct. 1811 (2014) ....................................................9

*Wesberry v. Sanders*, 376 U.S. 1 (1964).....................................................12, 15n, 17

*Whitcomb v. Chavis*, 403 U.S. 124 (1971).......................................................... 3n, 17-18

*White v. Regester*, 412 U.S. 755 (1973)........................................................................18

*Williams v. North Carolina*, No. 3:17-cv-00265-MOC-DCK,
    2017 WL 4935858 (W.D.N.C. Oct. 31, 2017),
    *aff'd*, 719 Fed. Appx. 256 (4th Cir. 2018) (unpublished) ............................13, 15

*Williams v. Virginia State Bd. of Elections*,
    288 F. Supp. 622 (E.D. Va. 1968),
    *aff'd per curiam*, 393 U.S. 320,
    *reh'g denied*, 393 U.S. 1112 (1969) ....................................................... passim

## Statutes

Mass. G.L. c. 53, §§ 6-10.............................................................................................4n

Mass. G.L. c. 53, § 8 ....................................................................................................3

Mass. G.L. c. 54, § 74 ..................................................................................................4n

Mass. G.L. c. 54, § 118 ................................................................................................3

Mass. G.L. c. 54, § 148 ............................................................................................. 3-4n

Mass. G.L. c. 54, § 151 ............................................................................................. 3-4n

Mass. St. 2010, c. 229 ..................................................................................................8

Me. Rev. Stat. 21-A, § 805 .........................................................................................10

Neb. Rev. Stat. § 32-714..............................................................................................10

## Constitutional Provisions

U.S. Const. art. I, § 2.........................................................................................15n

U.S. Const. art. II, § 1 .......................................................................................2, 7

U.S. Const. art. III ............................................................................................ 4-7

U.S. Const. amend. I ...........................................................................3, 5, 19, 20

U.S. Const. amend. XII ....................................................................................3, 12

U.S. Const. amend. XIV .......................................................................5, 11, 14, 19

U.S. Const. amend. XV....................................................................................11, 15n

U.S. Const. amend. XVII ..................................................................................15n

U.S. Const. amend. XIX ...................................................................................15n

## **Rules and Regulations**

Fed. R. Civ. P. 12(b)(1)..........................................................................................4

## **Miscellaneous**

4 Ronald D. Rotunda and John E. Nowak, *Treatise on Constitutional Law*,
    § 18.35 (5th ed. 2013) ...............................................................................15n

15 Moore's Federal Practice § 101.42[1] (2018 ed.) ................................... 7-8

## INTRODUCTION

Plaintiffs, three registered voters in Massachusetts, seek declaratory and injunctive relief invalidating the State's "winner-take-all" method for selection of presidential electors. Such relief, if granted, would upend a practice that dates back to the election of George Washington; is used in Massachusetts, 47 other States, and the District of Columbia; and has been upheld by all of the courts that have considered it, including in a decision summarily affirmed by the Supreme Court, *Williams v. Virginia State Bd. of Elections*, 288 F. Supp. 622 (E.D. Va. 1968) (three-judge court), *aff'd per curiam*, 393 U.S. 320, *reh'g denied*, 393 U.S. 1112 (1969).

Under the winner-take-all method, Massachusetts voters vote for the "electors for" their preferred presidential candidate, and the candidate whose electors win at least a plurality of the statewide popular vote is awarded the electors for Massachusetts. Plaintiffs contend that this method violates the "one person, one vote" principle and their right to freedom of association. They ask the Court to order a "proportional" method of distributing electors to each political party "based on the number of votes each party's candidate receives statewide." Compl. ¶¶ 13-14, 60(d)-(e) (Dkt. #1). But plaintiffs lack standing to assert these claims because their alleged injury is not concrete or particularized; if anything, it is a grievance shared by all Massachusetts voters who cast ballots for a losing presidential candidate. Moreover, their attempt to fundamentally change the electoral process governing the presidency is not redressable in a judicial forum. Their claims also require dismissal for failure to state a claim, because they present the "precise issues … necessarily decided" by the Supreme Court in *Williams*. *See Mandel v. Bradley*, 432 U.S. 173, 176 (1977). Even considered anew, a winner-take-all system for selecting presidential electors does not violate the "one person, one vote" principle for the simple reason that each voter's ballot *is* counted like every other. *Williams*, 288 F. Supp. at 627. Far from having their votes "discarded," Compl. ¶ 43, voters for the losing candidate "have set a

figure which must be matched and exceeded by opposing voters before the State's electoral vote bloc is awarded to the opponent." *Williams*, 288 F. Supp. at 627 (quotation and citation omitted). And the Supreme Court has rejected the idea that voters have a right "to elect candidates in proportion to [their] numbers" as an "extreme … political theory" not found in the Constitution. *City of Mobile v. Bolden*, 446 U.S. 55, 75 (1980) (plurality).

Indeed, plaintiffs ignore not only Supreme Court precedent, but also our Constitution's design. The Founders deliberately left to the States how to select presidential electors, recognizing the "contrariety of views" at the time of the Constitutional Convention: some proposed selection by each State's executive branch; others favored popular vote; others suggested that state legislatures choose; and still others proposed appointment by Congress. *McPherson v. Blacker*, 146 U.S. 1, 28 (1892). The "final result … reconciled" these views by leaving the choice to each state legislature, as set forth in U.S. Const. art. II, § 1. *Id.* Plaintiffs' attempt to reverse this result two centuries later should be rejected, and their lawsuit dismissed.

## BACKGROUND

The three plaintiffs filed their complaint on February 21, 2018.[1]  Compl. ¶¶ 7, 18-20. Richard Lyman and Robert Capodilupo are registered Republicans, and William Weld is a registered Libertarian. *Id.* ¶¶ 18-20. Weld also won two elections as the Republican candidate for Governor in Massachusetts, serving from 1991 to 1997. Each plaintiff has voted in the past for the Republican, Libertarian, or other non-Democratic presidential candidates in Massachusetts and alleges that he will continue to do so in the future. *Id.* ¶¶ 17-20.

---

[1] On the same day, plaintiffs' counsel filed similar complaints on behalf of voters in California, South Carolina, and Texas challenging the winner-take-all election systems in those States. *See Rodriguez v. Brown*, No. 18-01422 (C.D. Cal.); *Baten v. McMaster*, No. 18-00510 (D.S.C.); *League of United Latin American Citizens v. Abbott*, No. 18-00175 (W.D. Tex.).

Plaintiffs allege that Massachusetts's winner-take-all system "disenfranchises" voters who cast ballots for a presidential candidate other than the candidate who wins a plurality or more of the popular vote. *Id.* ¶¶ 3-5. They contend that this system violates the Equal Protection Clause's "one person, one vote" principle and their First Amendment free association rights. *Id.* ¶¶ 13-14.

Under the Constitution, the President is chosen by electors appointed by each State. U.S. Const. amend. XII. Article II, § 1, cl. 2 provides that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress." A presidential candidate must receive the votes of a majority of the electors to win the presidency, and, if a majority is not attained, the House of Representatives selects the president from the candidates (not to exceed three) having the highest numbers of electors' votes, with each State's House delegation having one vote. *Id.* amend. XII.

Massachusetts's winner-take-all system is reflected in Mass. Gen. Laws c. 53, § 8, 1st para., which provides that "[t]he state committees of the respective political parties … shall nominate the presidential electors" for each party and transmit to the Secretary of the Commonwealth the electors' names; the names of the presidential and vice-presidential candidates; and a written pledge by each elector to vote for the presidential candidate named in the filing for that party. After the election, the record of votes is transmitted by local election officials to the Secretary of the Commonwealth and examined by the Governor, who issues a certificate of election to the electors who receive the most votes. Mass. Gen. Laws c. 54, § 118.[2]

---

[2] *See also* Mass. G.L. c. 54, § 151 (a number of electors, equal to the whole number of senators and representatives in congress to which the commonwealth is entitled, shall be chosen by the

## ARGUMENT

## I.      THIS COURT LACKS JURISDICTION.

The Court should dismiss plaintiffs' claims under Fed. R. Civ. P. 12(b)(1) for lack of Article III standing.  The plaintiff "must allege in his pleading the facts essential to show jurisdiction," *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936), and "the necessary factual predicate may not be gleaned from the briefs and arguments," *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 235 (1990) (citation omitted).  Here, plaintiffs cannot establish two elements of the "irreducible constitutional minimum" for standing: a concrete and particularized injury-in-fact and redressability.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

### A.      Plaintiffs Do Not Allege a Concrete and Particularized Injury.

A "concrete and particularized" injury requires more than a generalized grievance or allegation that plaintiffs suffer "in some indefinite way in common with people generally." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) (citations and quotations omitted); *see also Lujan*, 504 U.S. at 560-61; *Blum v. Holder*, 744 F.3d 790, 796 (1st Cir. 2014).  Concreteness requires that the alleged injury "actually exist" and amount to more than an "abstract" injury. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).  Particularity reflects that an injury "must affect the plaintiff in a personal and individual way."  *Lujan*, 504 U.S. at 560 n.1.

Here, plaintiffs invoke standing only as voters, not as presidential electors or candidates.

---

voters); *id.* § 148 (electors shall meet at State House on the date fixed by federal law).  Electors for non-party presidential candidates in Massachusetts are governed by Mass. Gen. Laws c. 53, §§ 6-10, which require the filing of nomination papers, signed by 10,000 voters, identifying the names of the elector candidates pledged to the associated non-party presidential and vice presidential candidates, whose names also appear on the papers.  Although ballots contain the presidential and vice presidential candidates' names, not the individual electors' names, voters vote to select "Electors of President and Vice President."  Mass. Gen. Laws c. 54, § 78.

The complaint identifies two purported injuries.  First, it alleges that Massachusetts's law "distorts presidential campaigns and facilitates outside interference in our elections."  Compl. ¶ 9; *see also id*. ¶¶ 50-52 (arguing that existence of "a handful of battleground states" makes it easier for Russian hackers and others to sow chaos).  That general concern, however, does not amount to "a sufficiently concrete, personalized injury to establish standing." *Becker v. FEC*, 230 F.3d 381, 389 (1st Cir. 2000).  Rather, concern about foreign interference in our election system is (or, at the very least, should be) "widely shared" and "comparable to the common concern for obedience to law." *See id*. at 390 (citations omitted); *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (plaintiff voters' alleged injury failed as "the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance").

Second, plaintiffs allege that they have suffered "an injury that comes from lacking any meaningful representation in the final vote count for the President (and Vice President) of the United States," because they have been "deprived of the right to have their votes counted equally and meaningfully toward the election of the President."  Compl. ¶ 17.  They also allege a deprivation of "their First and Fourteenth Amendment associational rights" because the Massachusetts law "ensures that Plaintiffs' voices are not heard and Plaintiffs' votes do not count toward the selection of Electors." *Id.* ¶¶ 42-43.  As discussed in Sections II-IV, *infra*, these allegations do not demonstrate an injury-in-fact because States have plenary power to determine how presidential electors are allocated, and Massachusetts's method of selecting and allocating presidential electors works no injury to plaintiffs' constitutional rights. *See Bush v. Gore*, 531 U.S. 98, 104 (2000) (per curiam); *McPherson*, 146 U.S. at 35; *Williams*, 282 F. Supp. at 625-29.

More broadly, the voting-related injuries claimed by plaintiffs are not "concrete and particularized" under Article III.  A voter "fails to present an injury-in-fact when the alleged

harm is abstract and widely shared or is only derivative of a harm experienced by a candidate." *Crist v. Comm'n on Presidential Debates*, 262 F.3d 193, 195 (2d Cir. 2001). Thus, courts have held that voters lack standing, for example, to challenge the exclusion of certain candidates from presidential debates, *id.* at 194-95; *Becker*, 230 F.3d at 389-90; to enjoin the Electoral College from electing a president who was allegedly not a "natural born citizen" under U.S. Const. art. III, § 1, cl. 2, *Berg v. Obama*, 586 F.3d 234, 239-40 (3d Cir. 2009); or to prevent the certification of the Electoral College's vote if it is inconsistent with the results of the nationwide popular vote, *Collins v. Merrill*, No. 16-cv-9375 (RJS), 2016 WL 7176651, at *1-2 (S.D.N.Y. Dec. 7, 2016). The plaintiffs in those cases were not denied the ability to vote for their preferred candidate, *see Berg*, 586 F.3d at 239-40, *Becker*, 230 F.3d at 390, and they could not show any other particularized injury resulting from the challenged conduct, as opposed to an injury suffered "in some indefinite way in common with people generally," *Cuno*, 547 U.S. at 344 (citations and quotations omitted). Their concerns about the "proper application of the Constitution and laws" were too generalized and abstract to satisfy Article III. *Berg*, 586 F.3d at 240 (quoting *Lujan*, 504 U.S. at 573-74).

Here too, plaintiffs have not been prevented from voting for the presidential candidates of their choice, and, although they allege that the power of their votes has been diluted because they are not "equally and meaningfully" reflected in Massachusetts's final vote count for president, Compl. ¶ 17, that alleged injury may apply to any voter in the Commonwealth. Regardless of party affiliation, anyone who votes for the electors of a presidential candidate who does not win a plurality will not have their preferred slate of electors appointed for Massachusetts. Alleged injuries shared with the general voting population do not satisfy Article III. *See, e.g.*, *Fischer v. Cruz*, No. 16-cv-1224 (JS) (ARL), 2016 WL 1383493, at *2 (E.D.N.Y. Apr. 7, 2016) (no

6

standing where plaintiff shared "alleged injury with every other voter in the State of New York"); *Collins*, 2016 WL 7176651, at *2 (no standing where complaint was "premised entirely on alleged injuries that Plaintiff shares with the general voting population"); *Jones v. Bush*, 122 F. Supp. 2d 713, 717 (N.D. Tex.) (plaintiffs claiming infringement of "their right to cast a meaningful vote" lacked standing because they failed "to demonstrate how they, as opposed to the general voting population, [would] feel its effects"), *aff'd*, 244 F.3d 134 (5th Cir. 2000); *Froelich v. FEC*, 855 F. Supp. 868, 870 (E.D. Va. 1994) ("general claims of abstract harm to Virginia residents" do not constitute injury sufficient to satisfy Article III).

### B.     Plaintiffs' Alleged Injury Will Not Be Redressed by a Favorable Decision.

Second, plaintiffs cannot satisfy Article III's redressability requirement.  Redressability requires a likelihood the court can grant relief remedying the alleged injury, which entails an inquiry into whether the forum is appropriate.  *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 663-64 (D.C. Cir. 1996) (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38-39 (1976)). Here, the Constitution confers plenary authority on state legislatures, not the federal courts, to determine how to select electors in the manner that each state deems will best serve its citizens' interests.  *See* U.S. Const. art. II, § 1; *Williams*, 288 F. Supp. at 628 (observing that it was the state legislature's choice whether to "appoint[ ] electors in a manner which [would] fairly reflect the popular vote but thereby weaken the potential impact of Virginia as a State in the nationwide counting of electoral ballots, or to allow the majority to rule and thereby maximize the impact of Virginia's 12 electoral votes in the electoral college tally").  If plaintiffs believe Massachusetts has chosen the wrong system, they should address their concerns to Massachusetts's legislature.

Furthermore, redressability is not satisfied where a favorable result would eliminate only one of multiple alleged causes of an injury "without actually decreasing the injury at all."  15

Moore's Federal Practice § 101.42[1] (2018 ed.).  Plaintiffs allege that widespread use of winner-take-all systems causes presidential campaigns to focus on 14 "battleground" states (not including Massachusetts), thus giving "outsized political influence" to "an unrepresentative subset of the country."  Compl. ¶ 8.  Yet even if this Court were to issue an injunction requiring Massachusetts to adopt a proportional method of selecting its 11 electors, that order would not affect the laws of 47 other states and the District of Columbia and thus would do nothing to eliminate the claimed "outsized political influence" of the "battleground" States," *id.  See Williams*, 288 F. Supp. at 629 (any change from Virginia's winner-take-all system to a method based on congressional districts "would not … warrant Virginia or any other State to adopt an individual plan.  Whatever the pattern, to succeed it must be nationwide.").  Indeed, a unilateral injunction requiring Massachusetts to adopt a proportional method of selecting electors could actually reduce rather than enhance its voters' voices, as the prevailing candidates would no longer be guaranteed all of the State's electoral votes.  *See Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982) (Kennedy, J.) ("[T]he court's inability to redress the claimed injury may be manifest" where "the requested relief will actually worsen the plaintiff's position.").  While Massachusetts and several other States have enacted legislation authorizing entry into a compact pursuant to which each participating State would select as its electors the slate of electors associated with the presidential candidate who wins the national popular vote, the compact will become effective only when a sufficient number of states, cumulatively possessing a majority of electoral votes, enacts the compact.  *See* Mass. St. 2010, c. 229.  For now, Massachusetts's Legislature has determined that the winner-take-all method is currently in the State's best interest.  This Court should decline to entertain plaintiffs' quarrel with that choice.

## II.   SEEKING TO OVERTURN A PRACTICE USED SINCE THE ELECTION OF GEORGE WASHINGTON, PLAINTIFFS BRING CLAIMS THAT ARE FORECLOSED BY BINDING SUPREME COURT PRECEDENT.

Even assuming jurisdiction, the complaint should be dismissed for failure to state a claim.

*See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiffs' claims are foreclosed by precedent.

### A.   The Winner-Take-All System in Massachusetts Is Consistent with the Constitutional Design and Reflects a Policy Choice That States Have Made Since the First Presidential Election.

Under Article II, the States have plenary authority to determine the method of selection

of presidential electors, and States have exercised their broad authority over the past 230 years

by experimenting with different methods.  *See McPherson*, 146 U.S. at 27 (the Constitution

"leaves it to the legislature exclusively to define the method").  Longstanding practices of the

government "can inform [a court's] determination of what the law is."  *NLRB v. Noel Canning*,

134 S. Ct. 2550, 2560 (2014) (citations and quotations omitted); *see also Town of Greece v.*

*Galloway*, 134 S. Ct. 1811, 1819 (2014) ("Any test the Court adopts must acknowledge a

practice that was accepted by the Framers and has withstood the critical scrutiny of time and

political change.") (citations omitted).  Here, such considerations weigh wholly against plaintiffs.

A statewide "general ticket" method – which could have the same "winner-take-all"

result as the system used in Massachusetts today – was used as early as the first presidential

election in 1788-89 by the Pennsylvania Legislature.  *McPherson*, 146 U.S. at 29.[3]  In the second

presidential election in 1792, New Hampshire and Maryland joined Pennsylvania in using such a

---

[3] The term "general ticket" described several different variants of a method by which voters cast votes for individual electors, but irrespective of the precise form, the use of the "general ticket," like today's "winner-take-all" method, could result in all of a State's electors being affiliated with the same political party – even in a very close election – the same result that plaintiffs challenge here.  *Cf. infra* discussion of *Whitcomb v. Chavis*, 403 U.S. 124, 134 n.11 (1971), explaining a "winner-take-all" effect in the election of multi-member legislative elections.

method. *Id.* at 30. By the fourth presidential election in 1800, six States selected presidential electors by means of a statewide general ticket, including Virginia, on the advice of Thomas Jefferson. *Id.* at 31-32. "After 1832 electors were chosen by general ticket in all the states excepting South Carolina, where the legislature chose them up to and including 1860." *Id.* at 32. Massachusetts first used a "general ticket" system in 1804; chose its electors by joint ballot of the legislature in 1808 and 1816; used a district system in 1812 and 1820; and, in 1824, returned to the statewide general ticket system. *Id.* Today, Massachusetts, 47 other States, and the District of Columbia use a winner-take-all system. Compl. ¶ 2. The remaining two States, Maine and Nebraska, appoint two electors to the candidate who wins a plurality of the statewide vote and the remaining electors based on the vote in each congressional district. *See* Me. Rev. Stat. 21-A, § 805; Neb. Rev. Stat. § 32-714.

Because plaintiffs object not only to the winner-take-all system, but also to any "other non-representational methods, such as selection by Congressional District vote," *see* Compl. ¶ 12, their constitutional theory, if adopted nationwide, would invalidate the methods for selecting presidential electors in every single State in the nation. *No* State allocates its presidential electors by the "proportional" vote method – a fact that undermines plaintiffs' claim about "what the law is." *Noel Canning*, 134 S. Ct. at 2560; *Schweikert v. Herring*, No. 3:16-CV-00072, 2016 WL 7046845, at *2 (W.D. Va. Dec. 2, 2016) ("Plaintiff asks the Court to upend over two centuries of electoral practice" by declaring Virginia's winner-take-all method for selecting electors unconstitutional); *Williams*, 288 F. Supp. at 629 ("any … proposed limitation on the selection by the State of its presidential electors would require a Constitutional amendment").

**B.      Settled Supreme Court Precedent Requires Dismissal of Plaintiffs' Claims.**

Longstanding history aside, Supreme Court precedent forecloses plaintiffs' claims.

In 1892, the Supreme Court rejected in *McPherson* a similar challenge to appointment of electors

by congressional district – a method that would be unconstitutional under the theory that

plaintiffs advance here, *see* Compl. ¶ 12.  146 U.S. at 35-42.  The Court emphasized that "the

appointment and mode of appointment of electors belong exclusively to the states under the

constitution of the United States."  *Id.* at 35.  It ruled that the Michigan law did not violate the

Fourteenth or Fifteenth Amendments, because "where each citizen has an equal right to vote, the

same as any other citizen has, no discrimination is made."  *Id.* at 37, 40.[4]

In 1969, the Supreme Court ruled on the precise legal issue here, in *Williams*, an equal

protection challenge to Virginia's "general ticket" system, described there as having a "winner-

take-all effect."  The *Williams* plaintiffs made the exact same argument asserted by plaintiffs

here, arguing that Virginia's system for presidential electors violated the "one person, one vote"

principle because it "gives the choice of all of the electors to the statewide plurality of those

voting in the election – 'winner take all' – and accords no representation among the electors to

the minority of the voters," *i.e.*, those who voted for the losing candidate.  288 F. Supp. at 623.

They further argued that Virginia's system "debas[ed]" the votes of citizens who cast their

ballots for the losing candidate.  *Id.* at 626.

---

[4] Almost 75 years after *McPherson*, the Supreme Court declined to exercise original jurisdiction over an equal protection challenge to the widespread use of the winner-take-all system.  *See Delaware v. New York*, 385 U.S. 895 (1966).  *See also Penton v. Humphrey*, 264 F. Supp. 250, 251-52 (S.D. Miss. 1967) (three-judge court) (citing *Delaware v. New York* as basis to dismiss a challenge to Mississippi's system, which followed common practice of "allowing each voter to vote for all of [State's] electors on a general ticket, with the result that all of [each State's] electoral votes are cast as a unit for the presidential and vice presidential candidates who win a plurality of its popular votes").

The three-judge district court in *Williams* handily rejected the argument, explaining that "the general ticket does not come within the brand of" the decisions establishing the "one person, one vote" principle. *Id.* at 626-27 (discussing *Gray v. Sanders*, 372 U.S. 368 (1963); *Wesberry v. Sanders*, 376 U.S. 1 (1964); and *Reynolds v. Sims*, 377 U.S. 533 (1964)). "[T]he system is but another form of the unit rule," a "familiar application [of which] is in the casting of a constituency's single vote by its several delegates in a convention" and in the Constitution's Twelfth Amendment, which provides that, when no presidential candidate obtains a majority of electors in the Electoral College, United States Representatives "cast the [single] vote of their State according as the greater number of them vote." *Id.* "We see nothing in the unit rule offensive to the Constitution," the court concluded, since it "does not in any way denigrate the power of one citizen's ballot and heighten the influence of another's vote." *Id.* at 627.

The court found further support for the practice of electing a multi-member group of electors by noting its similarity to the at-large, statewide election of members of the U.S. House of Representatives in the early years of the Nation: "In the midst of the one-person, one-vote decisions, this practice was noticed without any question of its validity" in *Wesberry v. Sanders*. *Williams*, 288 F. Supp. at 628. In *Wesberry*, the Supreme Court discussed the "one person, one vote" principle under Article I, § 2 (requiring that Representatives be chosen "by the People of the several States") and explained that "[t]his rule is followed automatically, of course, when Representatives are chosen as a group on a statewide basis, as was a widespread practice in the first 50 years of our Nation's history." 376 U.S. at 8. "If a [statewide] plan is legally permissible in the selection of Congressmen," the *Williams* court concluded, "it may hardly be stigmatized as unlawful in choosing electors." 288 F. Supp. at 628. The court acknowledged that "once the electoral slate is chosen, it speaks only for the element with the largest number of

votes," and that this "in a sense is discrimination against the minority voters," but it nevertheless concluded that "in a democratic society the majority must rule, unless the discrimination is invidious.  No such evil has been made manifest here.  Every citizen is offered equal suffrage and no deprivation of the franchise is suffered by anyone."  *Id.* at 627.

The Supreme Court summarily affirmed the three-judge district court's decision, and thereafter denied a motion for rehearing.  *Williams*, 393 U.S. 320, *reh'g denied*, 393 U.S. 1112 (1969).  Its affirmance constitutes binding precedent, as the equal protection claim was both squarely presented and "necessarily decided" by the district court.  *Mandel*, 432 U.S. at 176.

Other courts that have considered challenges to winner-take-all systems for presidential electors have rejected such claims, relying on *Williams*.  *See Conant v. Brown*, 248 F. Supp. 3d 1014, 1024-25 (D. Or. 2017), *appeal pending*, No. 17-35349 (9th Cir.) (fully briefed); *Williams v. North Carolina*, No. 3:17-cv-00265-MOC-DCK, 2017 WL 4935858, at *1 (W.D.N.C. Oct. 31, 2017), *aff'd*, 719 Fed. Appx. 256 (4th Cir. 2018) (unpublished); *Schweikert v. Herring*, 2016 WL 7046845, at *2; *Hitson v. Baggett*, 446 F. Supp. 674, 676 (M.D. Ala.), *aff'd without opinion*, 580 F.2d 1051 (5th Cir. 1978).

### C.    *Bush v. Gore* Did Not Alter the Legal Landscape.

Plaintiffs are mistaken in suggesting that *Williams* is no longer controlling after *Bush v. Gore*.  *See* Compl. ¶ 39.  Summary affirmances lose their binding force only "when 'doctrinal developments' illustrate that the Supreme Court no longer views a question as unsubstantial, regardless of whether the Court explicitly overrules the case."  *Bostic v. Schaefer*, 760 F.3d 352, 373 (4th Cir. 2014) (citation omitted).  Nothing in *Bush v. Gore* suggests that the Court now would view as "substantial" the question of the constitutionality of the winner-take-all system.  In addition to the Court's express limitation of its ruling to "the present circumstances," 531 U.S.

at 109, *Bush v. Gore* had nothing to do with selection of presidential electors.

In *Bush v. Gore*, the Court held that Florida's court-ordered recount of certain ballots cast in the presidential election violated equal protection and due process because "the standards for accepting or rejecting contested ballots might vary not only from county to county but indeed within a single county from one recount team to another." 531 U.S. at 106.  Given the absence of any uniform, "adequate statewide standards for determining what is a legal vote," *id.* at 110, the recount process would violate the State's "obligation to avoid arbitrary and disparate treatment of the members of its electorate," *id.* at 105.  Plaintiffs perceive *Bush v. Gore* as having removed the requirement of "invidiousness" as an element of a violation of the "one person, one vote" principle, *see* Compl. ¶ 39, but they overlook later "one person, one vote" cases, which reflect that the Court has continued to consider the presence of "invidiousness."  *See, e.g.*, *Harris v. Arizona Indep. Redistricting Comm'n*, 136 S. Ct. 1301, 1307 (2016) ("minor deviations from mathematical equality do not, by themselves, make out a prima facie case of invidious discrimination under the Fourteenth Amendment") (citations and quotations omitted).  Moreover, it is unsurprising that the Court found no need to inquire into the existence of "invidiousness" in *Bush v. Gore*, because the constitutional violation it found there arose from the very lack of any uniform standards governing the recount, rather than a particular conscious decision to impose different standards on voters in different counties.

To the extent that *Bush v. Gore* has any precedential force beyond the specific facts presented, it confirms the States' plenary authority over selection of presidential electors.  *See Bush*, 531 U.S. at 104 (citing *McPherson* for the principle that "the state legislature's power to select the manner for appointing electors is plenary").  For that reason, post-*Bush* cases upholding winner-take-all systems all cite that case as *supporting* authority.  *See Schweikert v.*

14

*Herring*, 2016 WL 7046845, at \*2 (describing *Bush v. Gore* as "reaffirm[ing] the discretion of state legislatures to select their own method for selecting electors"); *Conant v. Brown*, 248 F. Supp. 3d at 1025; *Williams v. North Carolina*, 2017 WL 4935858, at \*1.  *Bush v. Gore* thus does not cast any doubt on the continuing force of *Williams*.

III.   **USE OF THE WINNER-TAKE-ALL METHOD TO ALLOCATE PRESIDENTIAL ELECTORS DOES NOT VIOLATE THE "ONE PERSON, ONE VOTE" PRINCIPLE.**

Even without considering *Williams*, plaintiffs' equal protection claim fails because the winner-take-all allocation of presidential electors does not violate the "one person, one vote" principle.  The theory underlying plaintiffs' claim is that they have been and will be "deprived of the right to have their votes counted equally and meaningfully toward the election of the President."  Compl. ¶ 17.  But under Massachusetts's winner-take-all system, every vote *is* counted equally.  Massachusetts's method for selection of electors thus satisfies the Equal Protection Clause.  *See Reynolds*, 377 US. at 560-83; *McPherson*, 146 U.S. at 40 (discrimination does not occur where "each citizen has an equal right to vote, the same as any other citizen has").

Plaintiffs' claim that their votes are somehow being "discarded" rests heavily, if not exclusively, on *Gray v. Sanders*, *see* Compl. ¶ 36, but *Gray* does not support plaintiffs' equal protection claim.  In *Gray* – decided one year before *Reynolds v. Sims* established the "one person, one vote" rule as a matter of equal protection[5] – the Court held that Georgia's "county unit" system for primary elections was unconstitutional because the system had the result of

---

[5] The "one person, one vote principle grounded in the equal protection clause" was established in *Reynolds v. Sims*, for which the Court had "laid the groundwork" in *Gray* (which cited the Declaration of Independence and Fifteenth, Seventeenth, and Nineteenth Amendments as source of "one person, one vote" principle), and in *Wesberry v. Sanders* (where the Court relied on art. I, § 2, as discussed *supra* page 12).  *See* 4 Ronald D. Rotunda and John E. Nowak, *Treatise on Constitutional Law* § 18.35, at p. 321 (5th ed. 2013).

"weight[ing] the rural vote more heavily than the urban vote and weight[ing] some small rural counties heavier than other larger rural counties." 372 U.S. at 379. The Court stated: "Once the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote – whatever their race, whatever their sex, whatever their occupation, whatever their income, and wherever their home may be in that geographical unit." *Id.*; *see also Reynolds*, 377 U.S. at 563-64, 568 (striking down Alabama's provisions governing apportionment of seats in state legislature, which resulted in "districts containing widely varied numbers of inhabitants" such that "a vote is worth more in one district than in another"; and holding that, under Equal Protection Clause, apportionment must be based on population).

Massachusetts's winner-take-all system readily satisfies that standard because it does not weigh votes for electors differently depending on where a voter resides. Every vote cast for presidential electors in Massachusetts is given equal weight in determining which presidential candidate receives the most votes and is awarded the State's slate of electors.

Seizing on language in a footnote in *Gray*, plaintiffs contend that the winner-take-all system violates the "one person, one vote" rule because "votes for a losing presidential candidate are … discarded when another candidate wins more votes." *See* Compl. ¶¶ 30, 36.[6] But "*Gray* lays down no such rule." *Graham v. Fong Eu*, 403 F. Supp. 37, 43 n.25 (N.D. Cal. 1975) (rejecting argument that *Gray* made it impermissible to "discard" votes for a losing bloc of delegates to national Republican convention), *aff'd*, 423 U.S. 1067 (1976) (*per curiam*). The

---

[6] In the footnote in question, the Court in *Gray* stated that some "weighting" of votes would occur even if Georgia's county "unit" votes were allocated strictly in proportion to population, because "if a candidate won 6,000 of 10,000 votes in a particular county, he would get the entire unit vote, the 4,000 other votes for a different candidate being worth nothing and being counted only for the purpose of being discarded." 372 U.S. at 381 n.12.

16

"defect considered in *Gray* was solely that of 'geographic discrimination,'" *id.*, and the ruling stands for the proposition that voters may not be treated differently based on geographical differences within a state.  *See Reynolds*, 377 U.S. at 560 (*Gray* and *Wesberry* "were based on different constitutional considerations and were addressed to rather distinct problems"; *Gray* "held that voters cannot be classified, constitutionally, on the basis of where they live, at least with respect to voting in statewide elections").  The Supreme Court itself clarified this footnote:

> [I]n *Gray*, …, 372 U.S., at 381 n.12, … we h[e]ld that the county-unit system would have been defective even if unit votes were allocated strictly in proportion to population.  We noted that if a candidate received 60% of the votes cast in a particular county he would receive that county's entire unit vote, the 40% cast for the other candidates being discarded.  *The defect, however, continued to be geographic discrimination.*  Votes for the losing candidates were discarded solely because of the county where the votes were cast.  Indeed, votes for the winning candidate in a county were likewise devalued, because all marginal votes for him would be discarded and would have no impact on the statewide total.

*Gordon v. Lance*, 403 U.S. 1, 4 (1971) (emphasis added).  *Reynolds* likewise makes clear that in announcing the "one person, one vote" principle, the Court was concerned with unequal weighting of votes based on geographical location or an individual characteristic such as race; it did *not* express concern with the concept pressed by plaintiffs here, *i.e.*, that votes are "discarded" as a result of merely losing an election in which the plurality candidate(s) are declared the winner.  *See* 377 U.S. at 566.

Moreover, the theory underlying plaintiffs' claim, if accepted, would require elimination of any electoral system in which a multi-member group of candidates is elected by plurality vote – a proposition the Supreme Court has repeatedly rejected.  In *Whitcomb v. Chavis*, 403 U.S. 124 (1971), the Court held that the use of a plurality voting system to elect a multi-member group of candidates to represent one district – a method that can produce a result similar to allocation of a slate of presidential electors – does not violate the Equal Protection Clause.  *Id.* at 160 ("[W]e

17

are unprepared to hold that … elections decided by plurality vote are unconstitutional in either single- or multi-member districts simply because the supporters of losing candidates have no legislative seats assigned to them."); *see also id.* at 134 n.11 (providing a "striking but typical example" of the "'winner-take-all' effect" in a multi-member legislative election).  In *White v. Regester*, 412 U.S. 755, 765 (1973), the Court reaffirmed that the use of plurality voting to select multiple candidates within a district is not inherently problematic as a matter of equal protection. Although the Court found that the use of multi-member districts violated equal protection under the particular circumstances there, its holding rested on the history of systemic, "invidious" and "official racial discrimination" in the counties at issue.  *Id.* at 765-69.  The Court expressly rejected the idea that the Constitution requires proportional representation, stating that to sustain a constitutional claim, "it is not enough that the racial group allegedly discriminated against has not had legislative seats in proportion to its voting potential"; rather, the plaintiff must show "that the political processes … were not equally open to participation by the group in question." *Id.* at 765-66.  The Court again reiterated this principle in *City of Mobile v. Bolden*, upholding a system in which candidates for a three-member commission were elected by city voters at large. The Court rejected the theory that every political group had a constitutional right "to elect candidates in proportion to its numbers," 446 U.S. at 75, because, while the Equal Protection Clause confers a "right to participate in elections on an equal basis with other qualified voters, [it] … does not protect any 'political group,' however defined, from electoral defeat."  *Id.* at 77. The Court emphatically rejected the claim that the city's method violated the "one person, one vote" principle by "diluting" the vote of voters whose preferred candidates did not prevail, finding it "obvious that nobody's vote has been 'diluted' in the sense in which that word was used in the *Reynolds* case."  *Id.* at 78.

Plaintiffs here cannot credibly claim to have been deprived of the "right to participate in elections on an equal basis with other qualified voters" or otherwise to have been excluded from the political process in Massachusetts.[7]  The mere fact that their preferred presidential candidate has not always won a plurality of the statewide popular vote – and that a different candidate was awarded the electors for Massachusetts – does not violate their equal protection rights.  *Id.* at 77 n.24 (the Equal Protection Clause "does not entail a right to have one's candidates prevail"); *see also id.* at 79 ("the Court has sternly set its face against the claim, however phrased, that the Constitution somehow guarantees proportional representation").[8]

## IV.    USE OF THE WINNER-TAKE-ALL METHOD TO ALLOCATE PRESIDENTIAL ELECTORS DOES NOT VIOLATE PLAINTIFFS' RIGHT TO FREEDOM OF ASSOCIATION.

Plaintiffs' claim that Massachusetts's winner-take-all system violates their free association rights likewise founders on its flawed premise that plaintiffs' votes "do not count toward the selection of Electors" and are "discarded."  *See* Compl. ¶¶ 42-44.  The First Amendment and the "liberty" aspect of the Fourteenth Amendment Due Process Clause protect citizens' right to form political parties and protect parties' rights to determine their organizational structure and select candidates who represent their views.  *Timmons v. Twin Cities*

---

[7] In two of the past ten presidential elections (in 1980 and 1984), the Republican presidential candidate has won the popular vote in Massachusetts and thus been awarded all of its electors. *See* http://electionstats.state.ma.us/ (last visited May 21, 2018).  In five of the past ten gubernatorial elections, the Republican candidate has won the election.  *Id.*  Plaintiff Weld was elected twice, in 1990 and 1994.

[8] *See also Graham v. Fong Eu*, 403 F. Supp. at 40-46 (upholding state law that required voters to vote for a bloc of statewide delegates to attend national Republican convention; holding that this system, analogous to "the universal practice of electing presidential electors on a statewide winner-take-all basis," *id.* at 46, satisfied plaintiff's right to equal protection and free association; and rejecting claim that this method was unconstitutional because it resulted in a "failure to provide convention representation for those who support losing candidates," *id.* at 42).

*Area New Party*, 520 U.S. 351, 357-59 (1997); *Tashijian v. Repub. Party of Conn.*, 479 U.S. 208, 214-15 (1986) (citations and quotations omitted).  Because voters express their views in selecting candidates, *Anderson v. Celebrezze*, 460 U.S. 780, 787-88 (1983), "[t]he First Amendment … protects the right to cast an effective vote by prohibiting restrictions on ballot access that impair the ability of citizens to express their political preferences, or that limit the opportunity for citizens to unite in support of the candidate of their choice." *Repub. Party of N.C. v. Martin,* 980 F.2d 943, 959-60 (4th Cir. 1993) (citing *Anderson*, 460 U.S. at 787-88, 794; *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)).

Massachusetts's method for allocating presidential electors does not impinge on this right to freedom of association.  Plaintiffs do not allege that appointing electors by a statewide winner-take-all system has the effect of limiting candidates' access to the ballot and thereby limiting plaintiffs' ability to express their political preferences.  *See Anderson*, 460 U.S. at 786-88. Indeed, they allege that their chosen candidates appeared on the ballot in 2016, and that they voted.  *See* Compl. ¶¶ 4-5, 18-20.  Nor do plaintiffs allege that the winner-take-all method for selecting electors has any effect on the associational rights of political parties in Massachusetts to determine their structure, engage in political activities, or select their leaders.  *Timmons*, 520 U.S. at 357.

The fact that plaintiffs' preferred candidates may not have won the election does not violate their rights to freedom of association.  "The First Amendment right to associate and to advocate provides no guarantee that a speech will persuade or that advocacy will be effective." *Smith v. Ark. State Highway Employees*, 441 U.S. 463, 464-65 (1979) (citations and quotations omitted); *Repub. Party of N.C. v. Martin*, 980 F.2d at 960 ("The First Amendment guarantees the right to participate in the political process.  It does not guarantee political success.").

## CONCLUSION

For the reasons stated above, plaintiffs' complaint should be dismissed in its entirety.

Respectfully submitted,

GOVERNOR CHARLES D. BAKER and
SECRETARY WILLIAM F. GALVIN,

By their attorneys,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Amy Spector
Robert E. Toone, BBO #663249
Juliana deHaan Rice, BBO #564918
Amy Spector, BBO #557611
Assistant Attorneys General
One Ashburton Place
Boston, Massachusetts  02108
(617) 963-2076
amy.spector@state.ma.us

Dated:  May 21, 2018

### Certificate of Service

I hereby certify that the above memorandum of law, which I filed electronically through the Court's electronic case filing system on May 21, 2018, will be sent electronically to all parties registered on the Court's electronic filing system.

/s/ Amy Spector
Amy Spector

21