IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD LYMAN; WILLIAM WELD; and ROBERT CAPODILUPO<br><br>Plaintiffs,<br><br>v.<br><br>CHARLIE BAKER, in his official capacity as Governor of the Commonwealth of Massachusetts; and WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of the Commonwealth of Massachusetts.<br><br>Defendants. | Case No. 1:18-CV-10327-PBS |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs respectfully respond to Defendants' Notice of Supplemental Authority (ECF. No. 50) which apprised the Court of a District Court Order granting a Motion to Dismiss in *Rodriguez v. Brown*, No. 18-01422 (C.D. Cal.) ("*Rodriguez*"). *Rodriguez* rests on incorrect legal conclusions and fails to address numerous, material arguments raised by Plaintiffs. As a result, the *Rodriguez* opinion provides no support for dismissal here.

As in this case, plaintiffs in *Rodriguez* made three primary arguments why California's use of winner-take-all ("WTA") method violates the Fourteenth and First Amendments. First, Plaintiffs argued that, viewing California's WTA election as a two-step election for *President*, the use of the WTA method discards minority votes at the first step, and thus prevents voters, like the Plaintiffs in this case, from ever having their votes count in the ultimate election for *President*. Second, plaintiffs argued that, even viewing the election as one for *Electors* only, the WTA method violates the Constitution because it unconstitutionally dilutes the voting power of

minority voters through a statewide, at-large, slate election for all of California's electors—a conclusion affirmed by decades of recent Supreme Court precedent.  Third, Plaintiffs argued that the WTA method violates their First Amendment rights to cast an effective vote and to associate for the advancement of political beliefs.  *Rodriguez*'s rejection of these arguments rested on a single premise: that all of them were controlled by the Supreme Court's decision in *McPherson v. Blacker*, 146 U.S. 1 (1892), and its summary affirmance of *Williams v. Virginia State Board of Elections*, 288 F. Supp. 622, 629 (E.D. Va. 1968).  *Rodriguez's* analysis of these cases, however, is incorrect and incomplete.

*McPherson* did not address the issue presented by Plaintiffs' WTA challenge.  Indeed, the Court in *Rodriguez* cited *McPherson* for the proposition that "[i]f presidential electors . . . are elected in districts where each citizen has an equal right to vote, the same as any other citizen has, no discrimination is made."  *Rodriguez*, No. 18-01422, at *4 (quoting *McPherson*, 146 U.S. at 40) (internal quotation marks omitted).  This statement of law is uncontroversial and does not resolve whether the WTA method of allocating Electors in Massachusetts in fact affords each citizen an equal right to vote.  Plaintiffs have alleged that the WTA method does *not* afford Plaintiffs an equal opportunity to vote because it discards or dilutes their vote once that vote is cast.  ECF No. 29, Pls.' Opp. to Defs.' Mot. to Dismiss at 13–19;[1]  *see also id.* at 10 (describing the facts and legal holdings of *McPherson*).

The court's conclusion in *Rodriguez* that the summary affirmance in *Williams* controls is

---

[1] *Rodriguez* also incorrectly states that "Plaintiffs do not allege California citizens do not have an equal right to vote for presidential electors." *Rodriguez*, No. 18-01422, at *4.  This statement is puzzling, as the plaintiffs' case in California is based on allegations that they are not afforded an equal opportunity to vote, whether viewed as an election for the President or for Electors.  The *Rodriguez* court appears to be focused solely on whether the plaintiffs had an equal opportunity to *cast* a ballot.  This, however, is not the law.  As Plaintiffs here have noted, votes must be subjected to "equal weight" endowed with "equal dignity," even after they are cast at the ballot box. Pls.' Opp. to Defs.' Mot. Dismiss at 13 (quoting *Bush v. Gore*, 531 U.S. 98, 104 (2000)) (internal quotation marks omitted).

also incorrect. For one, it is based on the incorrect view that California's presidential election must be analyzed as an election for Electors only—rather than a two-step election for President. *Rodriguez*, No. 18-01422, at *4–5. This view is at odds with the way modern Presidential Elections work, including in California and Massachusetts. Pls.' Opp. to Defs.' Mot. to Dismiss at 14–16. Moreover, just because votes for President are converted into votes for Electors does not mean that courts must ignore the fact that, in modern elections, Electors are not on the ballot and do nothing more than mechanically vote as instructed for the President. As the Supreme Court stated in *Bush v. Gore*, the Constitution affords the state plenary power in deciding the manner in which it selects Electors, but once it exercises that power in favor of giving its citizens the right to vote for President—as it has in Massachusetts—that right to vote is protected by the Fourteenth Amendment. Pls.' Opp. to Defs.' Mot. to Dismiss at 13 (quoting *Bush v. Gore*, 531 U.S. 98, 104 (2000)). It makes no sense to hold that the states may, under the Elector Clause, exercise this power to create what is in all functional respects a two-step election for President, but that the Constitution forbids a court—effectuating its duty to safeguard the Fourteenth Amendment rights of the state's citizens—from acknowledging that reality. [2]

The *Rodriguez* court also misapprehended the import of *Gray v. Sanders,* 372 U.S. 368 (1963) as endorsing the WTA method's discarding of votes because, as *Gray* noted, the Constitution sanctions "the allocation of Senators irrespective of population and ***the use of the electoral college*** in the choice of a President." *Rodriguez*, No. 18-01422, at *9 (citing *Gray,* 372

---

[2] To support its reading of the Constitution, the *Rodriguez* court cites to a portion of *Bush v. Gore* stating that "in each of the several States the citizens themselves *vote for Presidential electors*." *Rodriguez*, No. 18-01422, at *5 (emphasis in original). In the *very next sentence*, the Supreme Court stated that "[w]hen the state legislature vests the right to vote *for President* in its people, the right to vote as the legislature has prescribed is fundamental . . . ." *Bush*, 531 U.S. at 105 (emphasis added)); *see also id.* at 103 ("Nationwide statistics reveal that an estimated 2% of ballots cast do not register a vote for President for whatever reason . . . ."). The *Rodriguez* Court's selective citation to the Supreme Court's language does not support its conclusion.

U.S. at 378, 380) (emphasis added in *Rodriguez* opinion).  As already discussed, Plaintiffs do not challenge the Electoral College or any form of vote dilution mandated by the Constitution (such as the allocation of Electors among the states), but only the states' exercise of *discretion* in choosing a method of selecting Electors that discards votes when they would count most.  The *Rodriguez* opinion was also incorrect in limiting *Gray's* significance to geographic discrimination, when *Gray* itself and subsequent cases condemned political discrimination *as well as* geographic discrimination.  *See* Pls.' Opp. to Defs.' Mot. to Dismiss at 15–16.  What is more, it ignores the fact that the WTA system is itself a form of geographic discrimination, limiting the power of peoples' votes because of where they live and who they voted for.  *Id.*

Even if the *Rodriguez* court were correct that the citizens of California—or Massachusetts—merely vote for Electors, that would not end the analysis.  After dismissing Plaintiffs' arguments that California conducts a two-step election for President, *Rodriguez* fails to acknowledge or address Plaintiffs' further argument that, even if modern elections are viewed as elections for Electors, doctrinal shifts related to vote dilution and invidiousness have invalidated the Supreme Court's summary affirmance of *Williams*.  *See* Pls.' Opp. to Defs.' Mot. to Dismiss at 12–13.  In doing so, *Rodriguez* ignores decades of Supreme Court case law since *William*s showing that at-large electoral systems that work to dilute the votes of racial, or political, minorities—like the WTA system—violate the Fourteenth Amendment.  *Id*; *see also Bostic v. Schaefer*, 760 F.3d 352, 373 (4th Cir. 2014) ("Summary dismissals lose their binding force when 'doctrinal developments' illustrate that the Supreme Court no longer views a question as unsubstantial, regardless of whether the Court explicitly overrules the case.") (citing *Hicks v. Miranda*, 422 U.S. 332, 344 (1975)).

Finally, even assuming *Rodriguez* was correct in its Equal Protection Clause analysis, the

*Rodriguez* Court further, and incorrectly, concludes that *Williams also* controls the Plaintiffs' associational rights claims under the First and Fourteenth Amendments. *Rodriguez*, No. 18-01422, at *7-8. Nothing in the *Williams* opinion addresses violations of associational rights. Suggesting that the Supreme Court's summary affirmance controls Plaintiffs' associational rights claims here takes the power of summary affirmances well past their breaking point. *See* Pls.' Opp. to Defs.' Mot. to Dismiss at 10-11 (citing *Mandel v.* Bradley, 432 U.S. 173, 176 (1977) for the proposition that courts must analyze summary affirmance to determine if the factual and legal issues presented are identical to the present case).

      For all of these reasons, the *Rodriguez* opinion does not support dismissal here, and the Defendants' motion should be denied.

Dated: October 1, 2018                                    Respectfully submitted,

/s/ Seth V. Jackson
Seth V. Jackson, Esq., BBO # 658669
ZELLE LLP
161 Worcester Road, Suite 502
Framingham, MA  01701
Telephone:  (781) 466-0700
Facsimile:  (781) 466-0701
sjackson@zelle.com

and

David Boies (*Admitted Pro Hac Vice*)
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone:  (914) 749-8200
Facsimile:  (213) 629-9022
Email: DBoies@bsfllp.com

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

      I, Seth V. Jackson, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non registered participants on this 1st day of October 2018.

/s/ Seth V. Jackson
Seth V. Jackson
